Wright, J.,
delivered the opinion of the Court.
This is a bill Quid Timet, to secure to complainants, certain slaves, to which, they allege, they are entitled in remainder, to take effect in possession after the death of defendant, Sarah, the wife of the other defendant, John T. Goodall. They claim the said slaves under a deed, executed by the said Sarah, while she was a feme sole, and previous to her marriage with the said John *406 T., bearing date the 26th of March, 1824, whereby she, for the consideration of one dollar, to her in hand paid, by Fergus S. Harris, guardian of her two children, El E. Harris and Patsy S. Harris, gave and conveyed to her said two children, her negro girl, named Esther, about eight years of age, which was willed to her by her father, Thomas Cartwright. Said children to take possession of said negro and her increase, at the death of said Sarah: also, one hundred dollars of her pension money, to be paid into the hands of their guardian immediately, for the benefit of said children; also, one good feather bed and furniture, apiece. This deed was attested by"iw9~subscribing witnesses: namely, Hezekiah Cartwright, the brother of said Sarah, and Eli Harris, her brother-in-law, and admitted to registration in the county of Wilson, on the 26th of November, 1825, upon the probate only of Eli Harris, one of said witnesses, taken at the September Term of the County Court of Wilson County, in that year. It was never proved by the other witness, or otherwise' registered; so-that the registration, as such, was necessarily defective, for want of the proof of the other witness, and because, not within the time required by the Act of 1819, ch. 47, sec. 2. Its execution, however, as a common law instrument, at the time of its date, is fully established by the pleadings, the fact being averred in the bill, and admitted by the defendants in their answers. The complainant, Martha, is one of the children of defendant, Sarah, named in the deed, and the other complainants are the children, and only the next of kin of the other child, Eli R. Hams, who died subsequently to the ex *407 ecution of tbe deed, whereby they became entitled to his interest in remainder.
The slaves in dispute, are Esther and her descendants, numbering now, ten or more. At the time of the execution of said deed, the said Sarah and John T., resided in the county of Wilson, where it was executed, and where they have continued to live ever since, and she was then the widow of John Harris, the father of the two children named in the deed, and does not appear then to have had any other children; nor does it appear that the said John Harris left any estate, or that said children were in any manner provided for. The slave, Esther, bad come to said Sarah by' the Will of her father, Thomas Cartwright, who had died prior to the making of the deed; and in the Will, his widow had a life estate in the slave, and she had her in possession at that time, and lived till the year 1827. So, that said Sarah did not receive the possession of Esther, until after the execution of said deed, and after marriage with defendant, John T. The pr ecise time of the marriage between the said Sarah and John T., the former does not state; but we are satisfied it was upon the 6th of April, 1824, eleven days after the execution of the deed. Neither does she remember whether the deed was made after the engagement to marry was had between her and said John T.; but, we are also convinced, that it was — the bond for the marriage license being dated two days anterior to the execution of the deed. John T. Goodall, in his answer and cross-bill, denies that he knew of the deed until long after the marriage, and avers it was a scheme to defraud him, as husband, out of his just expectations, gotten up by *408 the said Sarah, and the attesting witnesses, and kept secret from him; but he states no special facts or circumstances of fraud. On the other hand, it is positively averred by the defendant, Sarah, in her answer to the cross-bill, and also by the claimants in remainder, that he was informed by her of the existence of the deed before the marriage, and made no objection thereto; but with a full knowledge of it, the rites of matrimony were consummated, and they deny the fraud, She says she urged her father to give Esther to her children, and he promised to do so; but died without changing his Will, and she executed the deed to carry out a long settled purpose. It appears the deed was known to others, besides the parties and witnesses, prior to the marriage; but whether to the said John T., does not appear; nor is it shown that any particular fraud or misrepresentation, was practiced upon him. And at most, all that can be claimed, is, that he was ignorant of the deed. It does not otherwise appear, than by his statement, that he knew his intended wife was entitled to this slave; and from the proof, he seems then to have been averse to owning that species of property. It does not appear that he settled, or offered to settle anything on the said Sarah, in the marriage, or that he then had the means to do so, though he is now in good circumstances. He had been before married, and had, by that marriage, a son, who now possesses a good estate. He has had possession of Esther and her descendants since 1827, and claims them absolutely, and denies the validity of the deed: says he has always so claimed them; but his wife, in her answer, says she was not aware that he did always set up this absolute *409 claim. She says, further, that with the exception of Esther and the pension money, he, by the marriage, got all she owned, to wit:’ a slave, Paralee, some stock, household furniture, and an interest in some slaves in the possession of her mother; and this is sustained by the proof, save as to the slaves in the possession of her mother, and as to which, the witness did not know how the fact was.
This deed cannot be regarded as fraudulent against the husband, John T. Goodall, and he has no equity to be relieved against it on that ground. According to some of the authorities, the general rule is stated to be, that a disposition by the wife of her property after a contract of marriage, and before it has been solemnized, will be fraudulent as against the husband, who has been kept ignorant of the transaction. And according to other authorities, such a deed is prima facie good, the bare fact that the husband did not know of it, without more, being insufficient to vacate it. Something must have been done to mislead him — some act, or statement, showing a case of mala fides. But, however this may be, it is agreed that every such deed is not, as a matter of course, to be set aside, because the husband was not a party, or privy thereto, but that each case is to be judged of by its own particular circumstances. And it is well settled, that if a conveyance be made by a woman, in the discharge of the moral duty of providing for the children of a former marriage, it will not be considered as a fraud upon the intended husband, though it had been concealed from him: Clancy on Rights, 619-620; Story's Eq., sec. 273; 2 Kent, 175; St. George vs. Wake, 1 Mylne & Keene, *410 610; Logan vs. Simmons, 3 Jrd. Eq. Rep., 487; Meigs' Rep., 147-8; 1 Head, 203-4.
Here, it seems to us, that Mrs. Harris only made a bona fide conveyance of a reasouable share of what she had to her children by her first husband, and there was no evidence that Mr. Goodall was actually mislead or deceived. Neither can the remainder be held invalid, because the slave, at the time of the gift, was not actually delivered into the possession of the donees in the deed; for the gift, if it is to be so called, being by toriting, was valid without the delivery, and the possession of the first taker, or of her who had the slave at the execution of the deed, became the possession of the remaindermen. In this case, the widow of Thomas Cartwright had a life estate in this slave, with remainder to defendant, Sarah, out of which she carved another life estate, with remainder to her children by her first marriage. The possession of these tenants for life, as they succeeded each other, was the possession of these children, as remaindermen, under the deed of their mother, to them. By the very position and relation of these tenants for life, they were constituted quasi trustees for this remainder, and could legally do nothing to its prejudice or destruction: King et als. vs. Sharp, 6 Hum., 55. In law, the effect of the deed was the same as if the entire legal estate had been put in a trustee to serve these continuous interests in the property: Carnis and wife vs. Marley, 2 Yer., 582-588.
Upon the marriage of Mr. Goodall, he, in respect to this slave, occupied precisely the shoes of his wife, and was subject to the same trusts and obligations with which she was chargeable anterior to the marriage ; and *411 when let into possession, after tlie decease of Mrs. Cartwright, he became by law, as husband, in virtue of the marriage, only the owner of his wife's life estate; but did not, and could not, acquire a greater interest, unless it can be shown that his wife had a greater estate. In truth, he and his wife, with the remaindermen, held under the same title, to-wit: the deed of the 26th of March, 1824. And this is so, even if he were ignorant of the deed, and claimed the slave absolutely; because whatever effected and bound the wife onerated him as husband. There is a great diversity between personal goods in which" the wife has a property in her own right, and those in which she has but a bare possession, or usufruct, or those she holds en auter droit. The marriage is an absolute gift to the husband of all chattels personal in possession in her own right, whether the husband survive the wife or no; but of personal goods, en auter droit, as executrix or administratrix, &c., the marriage is no gift of them to the husband, although he survive his wife. And so of goods of which she has but a bare possession, or temporary use; as if goods be bailed to a feme, or if she find goods and taketh a husband, these are not given to the husband: Co. Litt., 351, b; Collier et ux. vs. Poe, 1 Dev. Eq. Rep., 55-57; Logan vs. Simmons, 1 Dev. & Batt. Law Rep., 13-17.
But, it is said, this deed was executed while the Act of 1819, ch. 47, sec. 2, was in force; and not having been registered within twelve months, the term prescribed in that Act, it ceases to operate or have effect, even between the parties, until registered, which never having been legally done, it is to be treated as invalid for any *412 purpose; and that, therefore, the marital [rights of Mr. Goodall attached upon the entire title of this slave, and he became absolute owner. We have been referred to decisions, as establishing the position that under the construction given that Act, a deed, if not registered within twelve months, ceased to operate, even between the parties, until registered, and then only from its registration: Washington's Lesse vs. Trousdale and the Banks, Mar. & Yer., 385; Carnis and wife’s Lesse vs. Jones, 5 Yer., 249. And, it must be confessed, these authorities do establish the position. The correctness of this construction was acknowledged in Hays’ Lesse vs. McGuire et al., and Douglas vs. Morford, 3 Yer., 92, 373, cited by counsel; but these cases were not upon the Act of 1819, and cannot be regarded as authority, in its interpretation. The case of Washington’s Lesse vs. Trousdale and the Banks, was a contest between a mortgagee and a judgment creditor of the mortgagor, with a levy anterior to the registration of the mortgage, and, of course, is not an authority in the case now before us for decision; and, in truth, did not call for any expression of opinion as to the effect of an unregistered deed between the parties. Carnis and wife’s Lesse vs. Jones was a question between two deeds of the same land, executed by the same grantor, at different periods, involved, as wo have already seen, the title to real estate, and in other respects, presented a different inquiry from the case now under consideration.
It was uniformly held, prior to the Act of 1819, and subsequent thereto, under the Acts of 1827, ch. 59, and 1831, ch. 90, that as betioeen the parties-, registration was not necessary, and that the deed took effect from its *413 delivery: Hays’ Lesse vs. McGuire et ad., 8 Yer., 02. Even as to land, in a Court of Equity, the deed was efficient upon its execution; and as to slaves, and other personalty, whether in a Court of Law or Equity, it operated without registration. There was nothing, perhaps, in the language of the Act of 1819 that made it necessary to hold, that, as between the parties, registration was imperative, any more than in our other registry laws. Certainly, the legislation of North Carolina, adopted by us, in reference to the registry of titles to slaves, could scarcely be stronger. Here, if Mrs. Harris, having an immediate title, had, without writing, made a gift or sale of this slave, accompanied by actual delivery of possession, no one could doubt that the husband, Mr. Goodall, by his subsequent marriage, took nothing. How absurd, then, to hold that because the gift, instead of being in parol, was by deed, it must lose its effect, not being registered. We should not be inclined, therefore, if there was nothing else in the case to extend the doctrine of the decisions to which we have been referred, upon the Act of 1819, to a case like the present. Indeed, it may well be doubted whether this doctrine would, at any time, have been applied to slaves, and other personal estate: Douglas vs. Morford, 8 Yer., 38A-5; Id., 100.
But, this view aside, the Act of 1827, above named, relieves this deed of all difficulty growing out of its non-registration. It applies to deeds executed anterior to its passage, as well as those to be made in the future, and so far repeals, or modifies, the Act of 1819, as to restore the established law, making registration between the parties unnecessary, and enables the deed to retain *414 its effect from its delivery, provided the rights of creditors, or Iona fide purchasers for a valuable consideration, without notice, shall not be effected by the Act, or by the registration. We suppose it was competent for the Legislature to give this Act a retrospective effect, so far as to cure the want of registration in this deed : 1 Kent, 455-6; 8 Peters’ Rep., 88-111; 17 Howard, 576-8; 2 Hum., 595; 7 Hum., 345-858; 9 Hum., 546-548; 3 Sneed, 513-521.
We have seen that Mr. Goodall’s position, in respect to this controversy, is exactly that of his wife, his marital rights not having been defrauded. He is neither a creditor of, or a purchaser, from his wife. Marriage, it is true, is a valuable consideration, when we speak of a consideration as necessary or adequate to raise an use, or to support an ante-nuptial settlement or contract. But, independent of any contract specially touching the wife’s estate, the rights which the husband gains in that estate by the act of marriage, solely, are not purchased by him in a legal sense, but conferred by the mere act and operation of law. The marriage is the only contract entered into by the parties. As a part of the policy of the law, and as an incidental consequence of the relation contracted between the parties, the law gives the husband, in his own right, certain interests in his wife’s property. But, he does not purchase any part of it, not even that to which she is entitled at the instant of the marriage, much less does he contract for the purchase of that which is not hers then; such as things of which she had but a bare possession or use, or things held in trust, or as bailee. The husband and wife make but one person, and therefore, that which *415 binds her, binds him, and tho law will not transfer to him a higher estate or greater interest than she had: Logan vs. Simmons, 1 Dev. & Batt. Law Rep., 18-16. Here, this deed, undoubtedly, testing it even by the decisions upon the Act of 1819, and conceding all that is claimed by the counsel of the defendant, took effect at ils delivery — was in full operation at the marriage of Mr. Goodall and wife, and retained its efficacy for near a year thereafter, during which, he and she, as we have seen, were trustees in law for these remaindermen, holding by the same deed; and the most that can be urged is, that its subsequent non-registration within the year, caused its defeat ab initio. If we are disposed to yield to this — as we are not — and allowing too, that it was no part of the business of these tenants for life to have the deed registered, and that they could claim the invalidity of the remainder, because of this omission, still, inasmuch as the position of Mr. Goodall is precisely the same as that of his wife — he and she, as to this dispute, being one — the effect of the Act of 1827, is conclusive of the case.
We may remark, too, that this deed has been registered twenty years — in truth more than thirty — and if material, under the force of the Act, 1839, ch. 26, the law presumes it to have been registered on lawful authority, without regard to the form of certificate of probate; and although the contrary may appear upon the face of the papers, as it seems only to have been proved by one, instead of two, attesting witnesses: Webb et als. vs. Weatherhead, 17 Howard, 576-578, 2 Hum., 595. Whether, having been registered so long, we might not, under the circumstances of the case, also *416 presume it to have been registered within the year from its delivery, we need not decide.
It may be further remarked, that it does not very distinctly appear, whether this slave came into the actual possession of Mr. Goodall, by the death of Mrs. Cartwright, prior to the passage of the Act of 1827, or not.
The decree of the Chancellor will be affirmed, with costs.